MAY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. March 11, 1910.)

RAILROADS (§ 348*) — ACCIDENTS AT CROSSING — CONTRIBUTORY NEGLIGENCE — EVIDENCE—SUFFICIENCY.

In an action for death of the driver of a wagon while crossing a railroad track, evidence *held* to show that he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1144, 1146; Dec. Dig. § 348.*]

Hirschberg, P. J., dissenting.

On reargument. Reversed, and new trial ordered.

See, also, 120 N. Y. Supp. 1135.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, JENKS, and CARR, JJ.

John F. Brennan, for appellant.

Albert A. Wray (Stephen Callaghan and Edward Frank Glover, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

THOMAS, J. The plaintiff's intestate, 18 years old and experienced, was driving a wagonette westward across defendant's tracks at 12:37 o'clock a. m. on February 23d, when the wagon aft of the whiffletrees was struck by a south-bound train. The horses with harness released escaped uninjured. The driver and two persons sitting with him, and two of the three persons on each of the side seats in rear of the driver were killed, while two persons, who were sitting, one Palmer in the last seat on the south side, and one Miss Bird, who was sitting in the last seat on the north side, escaped alive, but injured. The same accident was before this court in Singer v. New York Central & Hudson River Railroad Co., 116 N. Y. Supp. 294, which related to the death of one of the passengers. In that case the question of defendant's negligence must have been similar to that now presented, and need not be discussed, although in the present instance it was properly submitted to the jury. But the question of the driver's negligence is presented at this time, and differs from that arising in the case of the passenger.

The care required of the driver is not lessened by the fact of his death; but, on account of the absence of his evidence, the jury is permitted to use presumptions and inferences and to permit evidence adduced to have probative force, whereon a verdict may be found for the plaintiff and sustained. There is evidence that for some distance before reaching the easterly rail of the north-bound track there were intermitting obstructions. The available seeing spaces varied in the length of view permitted. The driver, when he was at considerable distances from the track, could, had he made fortunate selection of places therefor, or had he looked with continued search, have seen the train, and he could have followed it appearing and disappearing, but always approaching. But he might have looked somewhat frequently without discovering it on account of the varieties of obstruction. The evidence of the survivor Palmer is:

"He bent forward this way, and turned his head this way, looking up and down the track. The horses kept going just the same. So far as I know, I don't remember any change in the gait. There was no change in the speed of the horses. They were going just the same with the driver with his head out and looking up and down the track. At that time I was about hitting the first rail, that it is the rail of the up track, I don't know. The first rail I hit, that is the first rail of the up track. Up to that time the driver had not, so far as I could observe, either looked or listened for the approach of a train, before we went on the crossing. He looked at that time, that is all. He looked that once. He didn't whip his horses up."

When the driver looked at that point, the train was right before his face. If there was not evidence of his looking at a place where to look was to see the train, an argument in vindication of his care might be attempted on account of the obstructions that attended his earlier progress towards the track and the evidence that the gate was up. But what can be said for him looking as he is shown to have looked, with the headlight of the engine glowing in full view? Assuming that he looked and saw the train, which seems a necessary presumption, what can justify his driving in front of the locomotive? Can it be said that he looked and discovered the train when it was too late to stop or to turn aside? It must be supposed that he looked at a point where, if he saw the train, he could avoid it. He seems to have judged that it

was useful to look when he did, and that he had his horses under such control that he could have arrested their progress. He must have judged that by looking as he did he could have avoided the train by stopping or turning aside his horses. Palmer states that he saw him "as he came towards the railroad crossing, or the track," and later says,. "At that time I was about hitting the first rail." If this means that the wagon was at the east rail, the horses could not have reached the south-bound track. There is no evidence that he hurried or delayed after looking. The horses were not injured. The wagon was struck, so he must have driven his wagon in front of the locomotive knowing that it was very near to him. I cannot discover that his driving in front of the locomotive was a constraining alternative, nor that it was a. mere error of judgment. He had eight people in his care, and the result of the accident shows the necessity for caution. There is sufficient evidence that the gates were up. But that did not excuse lack of care on his part. But even if their condition invited his passage, even if it could be said that such condition tended to lessen his care, the fact remains that he was not lulled into security, but, disregarding the suggestion of a safe passage, he sought to ascertain for himself. The learned counsel for the plaintiff justifies him as follows:

"The evidence which was submitted to the jury on this branch of the case was to the effect that, at the time in question, the driver was sober, and was a temperate, competent driver, of years of experience; that as he approached the crossing he looked to the right and the left for coming trains, notwithstanding the fact that the crossing gates were up, and he was relieved from the necessity of using as great care as would have been required of him in going upon a railroad track at a crossing not protected by gates, and a flagman; yet, the positive evidence is that he did look both ways at least once. This shows that the possibility of danger was in his mind as he approached the track, and that he was alert to discover the presence of danger. He was driving at a jog trot, about five miles per hour, a pair of good, strong, docile livery horses, with a heavy load of nine persons, including himself, in the wagon. There was no noise in the wagon to prevent his hearing a train. As he looked once, it is reasonable to suppose that. the matter being on his mind, he looked more than once, although neither of the two survivors of the accident saw him but once."

This argument may exculpate him for not earlier discovering the train; but it confirms my conclusion that when he did look he was conscious of possible danger, was "alert to discover" it, and that he did discover it, and chanced passing before the locomotive.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except HIRSCH-BERG, P. J., who dissents.