discharging the relator from custody, the People appeal. Reversed, proceeding dismissed, and relator remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Robert S. Johnstone, Deputy Asst. Dist. Atty., for the People.
Bertha Rembaugh, for relator.

INGRAHAM, P. J. For the reasons stated in the appeal in People ex rel. Barone v. Fox, 129 N. Y. Supp. 646, decided herewith, the order appealed from must be reversed, and the proceeding dismissed, and the relator remanded.

LAUGHLIN and MILLER, JJ., concur. CLARKE and DOWLING, JJ., dissent.

---

### PALMER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. May 26, 1911.)

RAILROADS (§ 307*)—INJURIES TO PERSONS AT CROSSINGS—NEGLIGENCE.

The mere fact that the gate tender at a railroad crossing lowered the gates at night about an hour before a traveler driving on the track while the gates were up was struck by a train did not relieve the railroad company from liability, because the gate tender must exercise reasonable care to see that the gates are kept down at such times as there may be passing trains during the night, and to recover for the injuries it need not be affirmatively established that the subsequent raising of the gates was the company's affirmative act.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 307.*]

Appeal from Trial Term, Rockland County.

Action by Frank B. Palmer, as administrator of Jeannette H. Palmer, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for defendant, and from an order denying a motion for a new trial made on the minutes, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, WOODWARD, and RICH, JJ.

George A. Blauvelt, for appellant.
Mortimer B. Patterson, for respondent.

HIRSCHBERG, J. The plaintiff's intestate was killed at the West Nyack crossing of the defendant's railroad, in the county of Rockland, on the morning of February 23, 1908. She was one of the occupants of a wagonette, which was being driven westward upon the highway, and which contained nine persons. The wagonette was struck by a south-bound train when the former reached the tracks of the defendant; the impact resulting in the injury of two of the occupants of the wagonette and the death of seven.

The contention of the plaintiff in the case at bar, as in other cases resulting from the same accident which have been before this court on appeal, was that the crossing gates maintained by the defendant were up at the time, and that contention has been sustained in the other cases on evidence substantially similar to that presented in this

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

instance. An affirmance of a recovery in the case of Singer v. N. Y. C. & H. R. R. R. Co., 132 App. Div. 890, 116 N. N. Supp 294, was upheld in the Court of Appeals by affirmance, without opinion (197 N. Y. 588, 91 N. E. 1120). To the same effect was the case of Dieterlen v. N. Y. C. & H. R. R. R. Co., affirmed by this court, without opinion, 134 App. Div. 977, 119 N. Y. Supp. 1123. In the more recent instance where the question has been presented, namely, in May v. N. Y. C. & H. R. R. Co., 137 App. Div. 7, 8, 121 N. Y. Supp. 791, 792, while the judgment and order were reversed on the question of contributory negligence, the case being that of the driver of the vehicle, the court, referring to the Singer Case, supra, said:

"In that case the question of defendant's negligence must have been similar to that now presented, and need not be discussed, although in the present instance it was properly submitted to the jury. * * * There is sufficient evidence that the gates were up."

In the case at bar, also, there was sufficient evidence that the gates were up at the time of the accident; but I think the judgment and order must be reversed for an error in the charge of the learned court, made at the request of the defendant's counsel after the jury had been charged in chief and just before they retired to deliberate on the verdict. The evidence established the fact that the gates in question were in charge of an employé of the defendant named Kauffman. He tended the gates at night, and was relieved by a day tender in the morning. He testified that he closed the gates on the night of February 22d at about the hour of 11:25, and it was proven that the accident occurred at 12:37 the next morning. He testified that it was his general habit to lower the gates at about 11 o'clock at night, and that he generally left them down until he was admonished by noise or otherwise that some one wanted to go through. I say that he testified that he put the gates down at about 11:25 on the night in question, although his testimony as to the hour and as to his custom with respect to the gates was not very clear. He said:

"On the night of the accident I left the gates down about 11:25, maybe 12 o'clock. * * * My custom as to lowering the gates at night was this: I had nights very foggy, I had them down all night. I never raised them until the day man come, but usually I leave them down about 11.

"By the Court: I put them down about 11, and leave them down until somebody comes and wants to get through sometimes, and sometimes they holler. * * * I had been in the habit of lowering the gates on foggy nights all night, and around 11 o'clock we left them down. * * * I have left them up all night."

After Kauffman put the gates down on the night in question he went into his shanty (sometimes referred to as the "station") for a smoke, and remained there until the accident occurred, being on his knees shaking down the ashes in the stove when he heard the train coming, and that he ran out as the accident occurred. The shanty referred to is close to the south-bound track and near the highway. It had a window on the north and one on the south side, looking up and down the tracks, but had no window facing the direction from which the wagonette approached upon the highway. Kauffman had no means of knowing of the approach of trains to the crossing from

either direction, other than the scheduled times afforded, or except as he could see them through the windows or hear their approach by the noise of the running of the train or the engine whistle or bell.

The defendant asked the court to charge:

"That if the gates were down when Kauffman went to the station, and from any cause unexplained by the plaintiff the gates were opened afterwards, then the defendant is not liable."

To which the court responded:

"I charge that it would not be negligence on the part of the railroad company."

To this the plaintiff's counsel duly excepted. The charge in question must be regarded as an instruction to the jury that, if they found that Kauffman lowered the gates when he said he did, no liability would be imposed upon the defendant if they were afterward raised at any time during the night by others, or by natural or unexplained causes; and obviously the charge excluded any duty of reasonable care on the part of the gate tender to see that the gates were kept down at such times as there might be passing trains during the night. I know of no authority for the proposition that, in order to render the defendant liable for negligence, it must be affirmatively established that the subsequent raising of the gates was the defendant's affirmative act. The jury might well hold the company liable for negligence on proof which fairly tended to establish that the gates were raised by travelers on the highway or by other agencies, provided the time elapsing and the circumstances surrounding the occurrence were sufficient to indicate that the condition could have been discovered by the gate tender in the exercise of reasonable care. As was said by the court in Palmer v. N. Y. C. & H. R. R. R. Co., 112 N. Y. 234, 241, 19 N. E. 678, 680:

"The duty of the company was imperative, and it is obvious that an open gate was a direct and explicit assurance to the traveler that neither train nor engine was rendering the way dangerous—that none was passing. A closed gate was an obstruction preventing access to the road; an open gate was equally positive in the implication to be derived from it that the way was safe. Nothing less could be implied, and no other conclusion could be drawn from that circumstance. The silence of the bell and whistle was an indication that no train or locomotive was within 80 rods of the crossing; the open gate an affirmative and explicit declaration and representation that neither train or locomotive was approaching with intent to pass. The way, then, was open to the intestate, and, as the highway was straight, that fact was apparent to him, not only when he reached the track, but for a long distance off. He had a right to rely to a certain extent upon that representation. * * * When, therefore, he moves on upon the track under an assurance of safety from those owning it, and from their servants, *whose especial duty it is to keep their attention fixed upon it*, and who have within their power the means of avoiding the infliction of injury, and whose business it is to use them so as to prevent danger, it is for the jury to say whether the traveler exercised that ordinary care and prudence which under the circumstances it would be natural to expect."

While the question considered in that case related to contributory negligence, the citation sufficiently indicates that the defendant is not, as matter of law, relieved from the consequences of the implied invitation to the passing traveler, merely because the invitation may have

been extended by others or in some manner unknown, provided the exercise of reasonable care on the part of the company or its servants would have indicated the existence of the fact and have restored the condition of safety to the crossing at the time of the passing of the train.

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.